William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave., 15th Floor
New York, New York 10017
Phone: (212) 286-1425; Fax: (646) 688-3078
Email: wcrand@wcrand.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

| | | |
|---|---|---|
| SANDRA HICKMON, | : | ECF |
| Individually and on Behalf of All Other | : | 20 Civ. _____ |
| Persons Similarly Situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | **COMPLAINT AND** |
| -against- | : | **JURY DEMAND** |
| | : | |
| FUN & FIT LLC d/b/a Home Instead Senior Care, | : | |
| BRIAN TRAINOR and JOHN DOES #1-10, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------------------X

Plaintiff SANDRA HICKMON ("Plaintiff" or "HICKMON"), on behalf of herself

individually and as class representative of other employees similarly situated, by and through her

attorney, complains and alleges for her complaint against FUN & FIT LLC d/b/a Home Instead

Senior Care, BRIAN TRAINOR and JOHN DOES #1-10 (together "Defendant" or

"Defendants") as follows:

## NATURE OF THE ACTION

1.      Plaintiff  HICKMON was a home health aide who worked for Defendants for

more than 40 hours per week ("overtime hours") and, along with numerous other similar home

health aides, was paid straight time for her overtime hours and was not paid time and one half for

her overtime hours and was illegally not paid for many 24 hour shifts or illegally paid for only 13

hours of her 24 hour shifts and also was not paid minimum wages under the New York Labor

Law and the N.Y. Health Care Worker Wage Parity Act.

2.      Plaintiff alleges on behalf of herself and other similarly situated current and former employees of the Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are: (i) entitled to unpaid wages from Defendants for overtime work for which they did not receive overtime premium pay, as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 *et seq.*

3.      Plaintiff further complains on behalf of herself, and a class of other similarly situated current and former employees of the Defendant, pursuant to Fed. R. Civ. P. 23, that they are entitled to back wages from Defendant for (a) hours worked for which they did not receive wages including wages as required under the Wage Parity Act, (b) overtime work performed for which they received straight pay and did not receive time and one half the minimum wage or time and one half their actual wages, and (c) spread of hours work performed for which they did not receive an extra hour of pay, as required by the New York Labor Law §§ 650 *et seq.* and the supporting New York State Department of Labor regulations and are also entitled to damages under the New York Wage Theft Prevention Act because Defendants did not provide proper notices to Plaintiff

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

6.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

6.    Plaintiff HICKMON, was, at all relevant times, an adult individual, residing in Westchester County in New York State.

7.    Upon information and belief, Defendant FUN & FIT LLC d/b/a Home Instead Senior Care (the "Corporate Defendant") is a New York limited liability company, with its principal place of business at 77 Tarreytown Road, White Plains, N.Y. 10607.

8.    Upon information and belief, Defendant  BRIAN TRAINOR is an officer, director and/or managing agent of the Corporate Defendant, whose address is unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and is jointly and severally liable with the Corporate Defendant.

9.    Upon information and belief, John Does #1-10 represent the officers, directors and/or managing agents of the Corporate Defendant, whose identities are unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and are jointly and severally liable with the Corporate Defendant.

10.    Upon information and belief, BRIAN TRAINOR is the President and Chief

Executive Officer of each Corporate Defendant and has held these positions during the last 6 years ("Trainor time period").

11.    Upon information and belief, during the Trainor time period, BRIAN TRAINOR had authority over the Corporate Defendant's management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendants' home health aide employees and other employees and her decisions directly affected the nature and condition of the home health care employees' employment.

12.    Upon information and belief, during the Trainor time period, BRIAN TRAINOR (1) had the power to hire and fire the home health aide employees of the Corporate Defendant, (2) supervised and controlled the home health aide employees' schedules and conditions of employment, (3) determined the rate and method of payment of the home health aide employees, and (4) maintained employment records related to the home health aide employees.

## COLLECTIVE ACTION ALLEGATIONS

13.    Pursuant to 29 U.S.C. §207, Plaintiff seeks to prosecute her FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendant at any time since December 5, 2014 (time tolled by failure to post notice) to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA and who were not paid minimum wages and/or overtime compensation at rates not less than one and one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

14.    This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which

the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there are at least 40 members of the Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

     15.    Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

     16.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

     17.    Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are

        a.   whether the Defendant employed the Collective Action members within the meaning of the FLSA;

        b.   whether the Defendant failed to keep true and accurate time records for all hours worked by Plaintiff and the Collective Action Members;

    c.   what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

    d.   whether Defendant failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs are employed, in violation of C.F.R. § 516.4;

    e.   whether Defendant failed to pay the Collective Action Members minimum wages and overtime compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

    f.   whether Defendant's violations of the FLSA are willful as that term is used within the context of the FLSA;

    g.   whether Defendant is liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

    h.   whether Defendant should be enjoined from such violations of the FLSA in the future.

18.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## CLASS ALLEGATIONS

19.    Plaintiff sues on her own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

20.    Plaintiff brings her New York Labor Law claim on behalf of all persons who were

employed by Defendant at any time since December 5, 2014, to the entry of judgment in this case (the "Class Period"), who were not paid all their straight time wages, minimum wages (including those required by the NY Health Care Worker Wage Parity Act), spread of hour wages, and/or overtime wages and/or were not provided the notices required by the Wage Theft Prevention Act (the "Class").

21.    The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there at least 40 members of Class during the Class Period.

22.    The claims of Plaintiff are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

23.    The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

24.    Plaintiff is committed to pursuing her action and has retained competent counsel experienced in employment law and class action litigation.

25.    Plaintiff has the same interests in this matter as all other members of the class and Plaintiff's claims are typical of the Class.

26.    There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a.  whether the Defendant employed the members of the Class within the meaning of the New York Labor Law;

b.  whether the Defendant failed to keep true and accurate time records for all hours worked by Plaintiff and members of the Class;

c.  what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.  whether Defendant failed and/or refused to pay the members of the Class for all hours worked by them as well as premium pay for hours worked in excess of forty hours per workweek as well as spread of hours pay for hours worked a spread of more than ten hours, within the meaning of the New York Labor Law;

e.  whether the Defendant is liable for all damages claimed hereunder, including but not limited to compensatory, interest, costs and disbursements and attorneys' fees;

f.  whether the Defendant should be enjoined from such violations of the New York Labor Law in the future; and

**STATEMENT OF FACTS**

27.    Plaintiff HICKMON was a home health aide/maid employed by FUN & FIT LLC d/b/a Home Instead Senior Care and  its President and Chief Executive Officer BRIAN TRAINOR ("TRAINOR"), from about September 7, 2011 until about April 17, 2020 (the "time period").

28.    FUN & FIT LLC did business as Home Instead Senior Care.

29.    Defendants are an employment agency that sent HICKMON to work as a home health aide/maid for numerous customers located in Westchester County, New York.

30.    During the time period, HICKMON maintained her own residence, and did not "live in" the homes of Defendants' clients or in the home of her employer, as her primary residence.

31.    During the time period, HICKMON was not an "exempt companion" of the Defendants' clients.

32.    While employed by Defendants, HICKMON generally worked more than 40 hours per week and was not paid time and one half for her hours worked over 40 in a work week.

33.    HICKMON often worked 24-hour shifts for Defendants during her employment and regularly worked 7 24-hour shifts in a week.

34.    When HICKMON worked 24-hour shifts, HICKMON was required to stay overnight at the residences of Defendants' clients, and needed to be ready and available to provide assistance to Defendants' clients as needed.

35.    When HICKMON worked 24-hour shifts, HICKMON was not permitted to leave the client unattended.

36.    HICKMON was only paid for approximately 13 hours of her 24-hours shifts.

37.    HICKMON was not paid any hourly rate for the other 11 hours worked.

38.    HICKMON has attached as Exhibit B certain of her paystubs which show that HICKMON was only paid 13 hours for her 24-hour live in shifts and sometimes less than 13 hours for her 24-hour live in shifts and sometimes was not paid at all for her 24-hour live in shifts, and was often paid below the minimum wage rate for her hours worked.

39.    HICKMON often was paid less than the minimum wage rate for her hours worked.

40.    HICKMON has spoken with numerous other health aide employees of Defendants, and they have told HICKMON that they also were paid below minimum wage for many hours worked and also were not paid any money at all for many hours that they worked.

41.    HICKMON was generally not permitted to leave the client's residence during her shift.

42.    Because Defendants' clients were often elderly and/or suffering from dementia, HICKMON did not get an opportunity to sleep for eight hours or 5 hours without any interruption.

43.    HICKMON did not get a one-hour break for each of three meals per day.

44.    HICKMON was often forced to combine her meal times with the meal times of the Defendants' clients because they needed feeding assistance or constant supervision.

45.    HICKMON did not receive the "spread of hours" premium of one additional hour at the minimum wage rate for the days in which HICKMON worked a spread of more than ten hours.

46.    HICKMON also did not receive minimum wages, including minimum wages under the Wage Parity Act, for all her hours worked and was not paid time and one half the minimum wage rate for her overtime hours and was not paid full time and one half her regular rate for her overtime hours.

47.    Defendants never provided or offered to HICKMON any health insurance, free of charge, and never paid HICKMON for any vacation.

48.    Upon information and belief Medicaid paid Defendants for some or all of her services and the services of the other similar home health aide employees.

49.    My co-workers performed the same and/or similar work to that of herself and were paid in a similar manner and subject to the same rules and policies ("similar health aides").

50.    The similar health aides did not "live in" the homes of Defendants' clients as their primary residences.

51.    The similar health aides generally worked more than 40 hours per week, but were not paid for every hour that they worked and often were paid less than the minimum wage rate for the hours that they worked.

52.    The similar health aides were only paid for approximately 13 hours of their 24-hours shifts, and were not paid any hourly rate for the other 11 hours worked.

53.    The similar health aides were generally not permitted to leave the client's residence during their shift.

54.    When the similar health aides worked 24-hour shifts, they were required to stay overnight at the residences of Defendants' clients, and were required to be ready and available to provide assistance to Defendants' clients as needed.

55.    At all relevant times, Defendants have maintained a practice and policy of paying similar health aides for only 13 hours of their 24-hour shifts in violation of New York Labor Law.

56.    Defendants had no policies in place to determine if a health aide received three one hour meal breaks during a 24-hour live in shift and did not have any policies to determine if any health aide received 5 hours of uninterrupted sleep and 8 hours of sleep during a 24-hour live

in shift.

57.    When HICKMON told the supervisor that HICKMON was unable to get any sleep during the night or any meal breaks, Defendants still deducted 8 hours of sleep time and three hours of meal breaks from her hours worked.

58.    Defendants had no policies in place to identify which health aides were not getting sleep or breaks during 24-hour live in shifts and to pay them for their lack of sleep or meal breaks.

59.    At all relevant times, Defendants have maintained a practice and policy of assigning HICKMON and similar health aides to work more than 40 hours per week without paying us one and one half times the basic minimum hourly rate for all hours worked in excess of forty per week, in violation of New York State Labor Law and the Wage Parity Act.

60.    HICKMON and the similar health aides did not receive the "spread of hours" premium of one additional hour at the minimum wage rate for the days in which we worked a spread of more than ten hours.

61.    Defendants' actions as described herein were intentional and not made in good faith.

62.    When HICKMON first started to work 24-hour shifts, HICKMON complained to her coordinator, Angela, and to payroll, that HICKMON was not able to sleep during the night or get meal breaks but was not being paid for 8 hours of alleged sleep and 3 hours of meal breaks.

63.    They responded that the Company does not pay more than 13 hours for a 24-hour shift.

64.    HICKMON was not able to get 5 hours of uninterrupted sleep or 8 hours of sleep

during 24 hour live in shifts because HICKMON generally had to get up at least every four hours to attend to the client, which included among other services, to take the client to the bathroom, to get the client a glass of water, to calm the client when the client awoke in stress, to clean the client's bed when the client urinated or defecated in the bed and/or to change the client's pajamas.

65.    During the time period, HICKMON was not paid full regular wages for all her hours worked and was not paid overtime wages for all of her hours worked over forty in a workweek ("overtime"), and was not paid an extra hour of pay for her hours worked over a spread of 10 hours per day.

66.    During the time period, HICKMON often worked for 24 hours staying overnight at the client's house, and on these days was only paid for 13 hours, despite the fact that her sleep was regularly interrupted generally at least 3-4 times by the client throughout the night which prevented HICKMON from getting 5 hours of uninterrupted sleep and/or 8 hours of sleep and despite the fact that HICKMON was not given any time off for meal breaks.

67.    During 24-hour live-in shifts, for many patients, HICKMON was required to turn the patient every 2 hours during the night, and as a result did not get 5 hours of uninterrupted sleep.

68.    HICKMON worked 7 24-hour live in shifts per week and therefore did not sign in and out using the client's land line phone because HICKMON was permanently working and did not leave.

69.    There were no codes or procedures to report a lack of sleep or breaks during 24-hour live in shifts.

70.    During the time period, HICKMON did not receive a meal break because HICKMON was on call or working during her break and regularly interrupted by the client while eating.

71.    During the time period, HICKMON was not paid for all her hours worked and was not paid for her hours worked over 40 hours a week ("overtime hours") at time and one half her regular wages and at times was not paid for all her hours at the minimum wage rate.

72.    During the time period, her job responsibilities as a home health aide/maid included, among others, cleaning the entire house, cooking and doing the laundry.

73.    HICKMON was required to prepare three meals a day, breakfast, lunch and dinner.

74.    Breakfast usually consisted of coffee, eggs, toast, and oatmeal.

75.    Lunch usually consisted of a cooked meal with rice or pasta, beans, and a meat or fish.  Sometimes alternatively HICKMON made a sandwich or mixed vegetables for lunch.

76.    Dinner usually consisted of the similar items as lunch plus soup and desert.

77.    HICKMON was required to prepare whatever foods the customer requested.

78.    HICKMON generally was required to make the beds every morning.

79.    Defendants required HICKMON to do a number of tasks on a daily basis, including but not limited to: dusting, vacuuming, cleaning the bathroom (including the toilet, tub and shower), mopping the kitchen floors, scrubbing the kitchen counters, cleaning the pots and pans, and taking out the garbage.

80.    HICKMON generally was required to do the laundry two days per week.

81.    HICKMON spent at least 30% of her time directly performing household work.

82.     During the time period, HICKMON and similar aides were not specifically notified by Defendants of the regular pay day designated by Defendants, Defendants' name, address and principle place of business and telephone number and her specific rate of pay as required by the New York Wage Theft Prevention Act.

83.     HICKMON and similar aides have not been given any specific notice of this information to sign in English or any other language and have not signed any such notices.

84.     Upon information and belief, Defendants did not post a notice indicating that Plaintiff and those similarly situated were entitled to minimum wages or overtime wages at time and one half.

85.     Attached as Exhibit A are some of HICKMON's paystubs received from FUN & FIT LLC.

**CLAIM I**
**FAIR LABOR STANDARDS ACT**

86.     Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

87.     At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

88.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action Members within the meaning of the FLSA.

89.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

90.     Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C.

§216(b).  The named Plaintiff's written consent is attached hereto and incorporated by reference.

91.    At all relevant times, the Defendants had a policy and practice of refusing to pay its employees minimum wages and/or overtime wages equal to time and one half their employees' regular wages for hours worked over forty in a work week.

92.    As a result of the Defendants' willful failure to compensate its employees, including Plaintiff and the Collective Action members overtime wages and/or minimum wages for all of their hours worked the Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

93.    As a result of the Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiff and the Collective Action members, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

94.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

95.    Due to the Defendants' FLSA violations, Plaintiff and the Collective Action Class are entitled to recover from the Defendants, their unpaid minimum and overtime wages, and an equal additional amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## CLAIM II
## NEW YORK LABOR LAW

96.    Plaintiff repeats and realleges each and every allegation of the preceding

paragraphs hereof with the same force and effect as though fully set forth herein.

97.    At all relevant times, Plaintiff and the members of the Class were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

98.    Defendants willfully violated Plaintiff's rights, and the rights of the members of the Class, by failing to pay them wages in violation of the New York Labor Law and its regulations.

99.    The Defendants' New York Labor Law violations have caused Plaintiff and the members of the Class, irreparable harm for which there is no adequate remedy at law.

100.    Due to the Defendants' New York Labor Law violations, Plaintiff and the members of the Class are entitled to recover from Defendants their unpaid wages, unpaid minimum wages, unpaid overtime wages, unpaid spread of hours wages, reasonable attorneys' fees, and/or costs and disbursements of the action, pursuant to New York Labor Law §663(1) et seq.

101.    Defendants willfully violated Plaintiff's rights by failing to provide his proper notices and wage statements in violation of the New York Wage Theft Prevention Act, N.Y. Lab. Law § 198(1-a) (enacted on April 9, 2011).

102.    As a result of Defendants' violation of the New York Wage Theft Prevention Act, Plaintiff is entitled to damages of at least $150 per week during which the violations occurred.

<u>**CLAIM III**</u>
(Breach of Contract –Third Party Beneficiaries of Wage Parity Act Contract
With New York State)

103.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

104.    Upon information and belief, at all times relevant to this complaint, Defendant were required to certify and did certify that they paid Plaintiff and members of the Class wages as required by NY Health Care Worker Wage Parity Act.

105.    The agreement to pay Plaintiff and the Class wages as required by the NY Health Care Worker Wage Parity Act was made for the benefit of the Plaintiff and the Class.

106.    Defendant breached their obligation to pay Plaintiff and the Class all wages they were due as required by the NY Health Care Worker Wage Parity Act and as result Plaintiffs and members of the Class were injured.

107.    Plaintiff and the Class, as third party beneficiaries of Defendants' contract with government agencies to pay wages as required by the NY Health Care Worker Wage Parity Act, and as persons protected by the NY Health Care Worker Wage Parity Act are entitled to relief for the breach of this contractual obligation and the violation of this Act, plus interest.

### **CLAIM IV**
(Unjust Enrichment, Defendants' Failure to Pay All Wages Due Including Wages for Minimum Wages under the NY Health Care Worker Wage Parity Act, and Spread of Hours)

108.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

109.    Under the common law doctrine of "unjust enrichment" insofar as Defendants, by their policies and actions, benefited from, and increased their profits and personal compensation by failing to pay Plaintiff and the Class: (1) all wages due for work performed; (2) an extra hour at the minimum wage  for working a "spread  of hours" in excess of 10 hours or a shift longer than 10 hours; and (3) all minimum wages due under NY Pub. Health§ 3614-c, the New York Health Care Worker Wage Parity Act.

110.    Defendant accepted and received the benefits of the work performed by Plaintiff and the Class at the expense of Plaintiff and the Class.  It is inequitable and unjust for Defendants to reap the benefits of Plaintiff's and the Class' labor, without paying all wages due, which includes but is not limited to all minimum wages due under NY Pub. Health§ 3614-c, the New York Health Care Worker Wage Parity Act, for hours caring for the clients of Defendants.

111.    Plaintiff and the Class are entitled to relief for this unjust enrichment in an amount equal to the benefits unjustly retained by Defendants, plus interest on these amounts.

## CLAIM V
### (Violation of Wage Parity Act Minimum Wage Requirement)

112.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

113.    Upon information and belief, at all times relevant to this complaint, Defendants were required to certify and did certify that they paid Plaintiff and members of the Class wages as required by NY Health Care Worker Wage Parity Act.

114.    Under the NY Health Care Worker Wage Parity Act Defendants were required to pay Plaintiff and the members of the Class minimum wages under the NY Health Care Worker Wage Parity Act.

115.    Defendants breached their obligations to pay minimum wages as required by the NY Health Care Worker Wage Parity Act, and as result Plaintiff and members of the Class were injured.

116.    Plaintiff and the Class are entitled to recover their unpaid minimum wages, plus interest, as relief for the violation of the NY Health Care Worker Wage Parity Act.

**CLAIM VI**
(Breach of Contract-Wages)

117.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this

Complaint.

118.    Plaintiff and the members of the class entered into contracts with the Defendant

under which Plaintiff and the members of the Class were to provide home health aide and maid

services and Defendants were required to pay (a) wages as required by law, (b) wages equal to

time and one half the regular wage rate for hours worked during Federal holidays and also (c) a

one week paid vacation annually.

119.    Plaintiff and the members of the Class fulfilled their obligations under the

contracts but Defendant failed to pay the wages as required by the contracts.

120.    As a result of Defendants' breach, Plaintiff and the members of the Class are

entitled to recover damages, plus interest.

**CLAIM VII**
(Living Wage Act claim)

121.     Plaintiffs realleges and incorporate by reference all the allegations set forth above.

122.    NYC Admin. Code § 6-109 provides that an employer whose employees perform

work pursuant to city service contracts or subcontracts (the "City Service Contract(s)") must pay

"no less than the living wage and must provide its employees health benefits (supplemental

benefits) or must supplement their hourly wage rate by an amount no less than the health benefits

supplement rate."

123.    NYC Admin. Code § 6-109 further provides that "[the abovementioned]

requirement applies for each hour that the employee works performing the city service contract

or subcontract."

124.    The "living wage" and "health benefits" or "health benefits supplement" are the wages and supplements set forth under Homecare Services in § 6-109 of the NYC Admin. Code. Upon information and belief, the schedule of living wages and supplements to be paid to all workers furnishing labor pursuant to the City Service Contract(s) was annexed to and formed a part of the City Service Contract(s), in accordance with NYC Admin. Code § 6-109.

125.    Named Plaintiff and other members of the putative class furnished labor to Defendant in furtherance of its performance of the City Service Contract(s).  Upon information and belief, Defendant willfully paid Named Plaintiff and the other members of the putative class less than the rates of wages and benefits to which Named Plaintiff and the other members of the putative class were entitled.

126.    Defendant's actions as described herein were intentional and not made in good faith.

127.    Upon information and belief, the City Service Contract(s) entered into by Defendant contained provisions requiring the payment of living wages and health benefits or health benefit supplements to Plaintiffs.

128.    Those living wages and health benefits or health benefit supplements were made a part of the City Service Contract(s) for the benefit of Plaintiffs.

129.    Defendant breached the City Service Contract(s) by willfully failing to pay Plaintiffs the living wages and health benefits or health benefit supplements for all labor performed.

130.    Further, NYC Admin. Code § 6-109 specifically requires, as a matter of law, that

language mandating compliance with NYC Admin. Code § 6-109 be included with and form a part 13 of the City Service Contract(s).

131.    Further, upon information and belief, each and every City Service Contract(s) contained a provision, in identical or similar language, stating that "each and every provision of law required to be inserted in this Agreement shall be and is inserted herein.  Furthermore, it is hereby stipulated that every such provision is to be deemed to be inserted herein."

132.    By reason of its breach of the City Service Contract(s), Defendant is liable to Plaintiffs for an amount to be determined at trial, plus interest.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and all other similarly situated Collective Action Members and members of the Class, respectfully requests that this Court grant the following relief:

    a.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiff and her counsel to represent the Class;

    b.  Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and her counsel to represent the Collective Action members;

    c.  Judgment in an amount to be determined at trial, plus interest;

d.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

e.  An order tolling the statute of limitations;

f.  An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

g.  An award of unpaid wages, spread of hours wages, overtime wages and minimum wages due under the FLSA, the New York Labor Law, the New York common law, and/or the NY Health Care Worker Wage Parity Act;

h.  An award of liquidated and/or punitive damages, as a result of the Defendants' willful failure to pay wages, minimum wages, and/or overtime wages pursuant to 29 U.S.C. § 216 and the New York Labor Law and the New York common law and the NY Health Care Worker Wage Parity Act;

i.  An award of prejudgment and postjudgment interest;

j.  An award of costs and expenses of this action together with reasonable attorney's and expert fees;

k.  Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated:  New York, New York
        December 5, 2020

                    LAW OFFICE OF WILLIAM COUDERT RAND

                    _____
                    William Coudert Rand, Esq.
                    *Attorney for Plaintiff*, Individually and on
                    Behalf of All Persons Similarly Situated
                    501 Fifth Avenue 15th Floor
                    New York, New York 10017
                    Tel: (212) 286-1425
                    Fax: (646) 688-3078
                    Email: wcrand@wcrand.com