**LAW OFFICE OF WILLIAM COUDERT RAND**
501Fifth Avenue, 15th Floor
New York, New York 10017
Phone: (212) 286-1425; Fax: (646) 688-3078
Email: wcrand@wcrand.com

February 14, 2022

**Via ECF**

Hon. James L. Cott
Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
Courtroom: 21D
500 Pearl St.
New York, NY 10007-1312
    Deputy Phone: (212) 805-0250
    Chambers Phone: (212) 805-0250

    Re:    SANDRA HICKMON et al. v. FUN & FIT LLC et al., 20 Civ. 10270 (RA)

**PARTIES' JOINT MOTION
TO RESTORE THIS ACTION TO THE COURT'S CALENDAR AND FOR
APPROVAL OF SETTLEMENT**

Dear Judge Cott:

    Plaintiffs and Defendants hereby move for court approval of their fully executed settlement agreement which is attached as Exhibit A as per the Second Circuit's decision in Cheeks v. Freeport Pancake House, Inc., 796 F. 3d 199 (2d Cir. 2015).

**I.**    **SUMMARY OF THE CASE**

    Each Plaintiff alleges to have been a home health aide who worked for Defendants. Plaintiffs allege that they worked for more than 40 hours per week ("overtime hours") and were paid straight time for their overtime hours and were not paid time and one half for their overtime hours. Plaintiffs allege that they were paid for only 13 hours of their 24 hour shifts. Finally, Plaintiffs allege that they were not paid spread of hours ages and minimum wages under the N.Y. Health Care Worker Wage Parity Act.

Defendants answered the Complaint in this action on March 30, 2021, and unequivocally denied any liability or wrongdoing. Defendants also indicated that they intended to vigorously defend themselves against the claims if the Parties were not able to effectuate a fair and reasonable settlement.

The parties exchanged document discovery including the wage and hour records of Plaintiffs. The parties then negotiated over a number of weeks until they were able to reach a settlement. On the basis of the business and payroll records, and an analysis thereof, Plaintiffs' Counsel is satisfied that he has a sufficient basis to properly value the claims as alleged in the Complaint. Recognizing the risks of continued litigation, including the risk that the Plaintiffs might obtain a recovery less favorable than, and/or comparable to, the recovery embodied in this Settlement, and that any recovery may not be obtained for several years, if at all, Plaintiffs' Counsel is satisfied that the terms and conditions of this Settlement are fair, reasonable, and adequate, and that this Settlement is in the best interests of the Plaintiffs. The Parties recognize that continued prosecution of the Action would be protracted and expensive, with an uncertain outcome, and accordingly agree that the Settlement should be consummated as set forth herein.

## II.   TERMS OF THE SETTLEMENT

The settlement agreement is fair and reasonable. The settlement was negotiated at arm's length, back and forth, over weeks and was facilitated by the exchange of voluminous records from the Defendants. The final settlement, subject to court approval, is in the total amount of $60,000, which is to be paid as follows: $25,813.69 to SANDRA HICKMON, $13,918.31 to MARCELLA CLOVIS, and $20,268 to the Law Office of William Coudert Rand (calculated as reimbursement of complaint filing fee of $402 plus 1/3 of remaining settlement recovery), as and for attorneys' fees and costs.

The settlement amount of Marcella Clovis was calculated as 2.2 hours of unpaid work per 24 hour live in shift times her overtime rate. The settlement amount of Sandra Hickman was calculated as 1.4 hours of unpaid work per 24 hour live in shift times her overtime rate. Sandra Hickman agreed to less hours per shift because she generally worked 7 days per week so Defendants argued that if she never had a break or sleep, she must have inevitably gotten sleep during the shifts. Marcella Clovis generally worked 3 24 hour live in shifts per week, and as a result, she had the argument that she was not able to get any sleep during the shifts and then made up the lost sleep at home during her 4 off days per week. Defendants alleged that they had wage theft notices so no amount was allocated to that claim. The 2.2 hour and 1.4 hour settlements of Plaintiffs' claims for 8 hours of unpaid sleep and 3 hours of unpaid breaks during 24-hour live in shifts is fair as there was no documentary evidence regarding the lack of sleep or breaks, and Defendants adamantly argued that the Plaintiffs obtained the sleep and breaks. Defendants have argued that documents produced by Defendants show that a second health aide was often assigned for a daily 8 hour shift during each Plaintiffs 24-hour live in shifts to permit Plaintiffs to get breaks and sleep. Given the difficulty in proving this claim and given the Defendants assertion that none of the Plaintiffs ever informed the Defendants that they did not receive the requisite sleep and meal break time during a single 24 hour shift, the settlements are reasonable.

### III.    APPLICATION OF FACTORS FOR APPROVING FLSA SETTLEMENTS

The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. See 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]).

Courts have interpreted this limitation to mean that parties may not privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor. See *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015) (Second Circuit held that F.R.C.P. 41(a)(1)(A)(ii) "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."); *Yunda v. SAFI-G, Inc.*, 2017 U.S. Dist. LEXIS 65088 (S.D.N.Y. 2017) (bifurcated settlements, wherein FLSA claims are submitted to the court for approval, but parallel NYLL claims are not, is permissible because NYLL parallel claims do not require court approval); *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.,* No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007); *compare with Gaughan v. Rubenstein,* 2017 U.S. Dist. LEXIS 107042, 2017 WL 2964818 (S.D.N.Y. 2017) (pre-litigation FLSA settlements do not require approval of the district court or the DOL if the plaintiff was represented by counsel).

Courts considering motions to approve FLSA settlements, i.e., *Cheeks* motion, must be satisfied that the proposed settlement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.,* 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015). For a court to find a settlement is fair and reasonable, "the parties must provide enough information for the court to examine the bona fides of the dispute. The employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages." Id. (internal quotations omitted).

To determine whether a settlement is fair and reasonable under the FLSA, courts consider the totality of circumstances, including but not limited to the following factors: "(1) the

plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Fisher v. SD Prot. Inc.,* 948 F.3d 593, 600 (2d Cir. 2020), quoting, Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

### A.  **Plaintiffs' Possible Range of Recovery**

Here the Plaintiffs sought 8 unpaid hours deducted for sleep and 3 unpaid hours deducted for breaks (including associated overtime and spread of hours wages). Plaintiffs are recovering 2.2 hours (Clovis) and 1.4 hours (Hickman) for each of the alleged 11 hours of unpaid work performed during each 24-hour live in shift, which equals a recovery of 20% (Clovis) and 12.7% (Hickman) of alleged total alleged damage, which is reasonable given that there are no documents or records proving that Plaintiffs did not get sleep or breaks and Defendants argue documents establish that Plaintiffs agreed to inform the Defendants if they did not receive requisite sleep or meal breaks, and thus the claim relies on the Plaintiffs' testimony. Furthermore, there is a significant risk that Plaintiffs will not prevail or will only partially prevail at trial as a jury may find that Plaintiffs did get breaks and sleep during many 24-hour shifts. Thus the material risk to Plaintiffs in proving that they did not get sleep or breaks shows that the settlement is fair. The settlement did not include any recovery for the Wage Theft Prevention Act claim because Defendants alleged that Plaintiffs had signed a notice. No money was allocated to Plaintiffs' claim for minimum wages under the Wage Parity Act because the Defendants have denied any liability on this claim and claim that they offered all the Plaintiffs health insurance and paid them vacation pay. Plaintiffs have no documents indicating they were not offered health insurance and Plaintiffs' paystubs indicate they were paid for vacation pay so

5

it is reasonable that Plaintiffs would agree to no recovery on this claim.  Finally, the settlement recovery was reduced by Plaintiff's attorneys' costs and 1/3 contingency legal fees which are to be paid to Plaintiffs' attorneys. This amount is reasonable. *Johnson v. Brennan,* No. 10 Civ. 4712, 2011 WL 4357376, at *19 (S.D.N.Y. Sept. 16, 2011) (noting that courts in this circuit routinely grant requests for attorney fee award of 33% and collecting cases); *Cortes v. New Creators, Inc.,* 2016 WL 3455383, at *5, 9 (S.D.N.Y. June 20, 2016) (approving fee award of one-third of settlement and noting such award is "consistent with contingency fees that are commonly accepted in the Second Circuit in FLSA cases"); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011) (awarding attorneys' fees of 1/3 settlement fund).

We believe that, in light of the uncertainties associated with establishing liquidated damages and the strong desire to avoid future legal proceedings, the amounts payable to each Plaintiff falls within the range of reasonableness. *See Beckert v. Rubinov*, 15 Civ. 1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(finding that the "amount [plaintiff] would receive under the Agreement ($29,557.97) is a substantial proportion of the maximum possible recovery he identifies ($114,700)").  Here, the parties were able to reach an agreement at a relatively early stage of proceedings, before any trial. *See Burgos v. San Miguel Transp., Inc.*, 2016 U.S. Dist. LEXIS 166248, *6, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016)(citing early stage of the case as one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff initially contemplated).

### B. Avoiding Anticipated Burdens and Expenses

Litigating FLSA claims and damages is typically a fact-intensive process demanding in-depth and potentially costly and uncertain litigation by both parties, including written discovery, depositions, expert discovery, voluminous pre-trial briefing of summary judgment motions

regarding liability and damages issues, and potentially, a lengthy trial on liability and/or damages. In this case where the parties were confronted with the testimony of the 3 parties at deposition and trial and lengthy summary judgment motions, each party benefits substantially from the settlement. In short, a settlement now avoids years of litigation and significant expenses for depositions, motions, a trial and appeals, which would be incurred by both parties before a resolution would be reached.

### C. Seriousness of Litigation Risks

As set forth above, there was no guarantee of success on either side as the case relied heavily on oral testimony. Furthermore, Defendants might have prevailed at trial or on appeal related to the overtime obligated to be paid from January 1, 2015 to October 13, 2015 as there is no Second Circuit case on point and the district court cases are split. See De Carrasco, 2017 U.S. Dist. Lexis 206682, at *12. Plaintiffs are settling their claims for overtime during the period on or between January 1, 2015 and October 13, 2015, which claims would be dismissed if the court held that the overtime order did not become effective until October 13, 2015. See *DeCarrasco v. Life Care Services, Inc.*, 2017 U.S. Dist. Lexis 206682 at *12 (December 15, 2017 S.D.N.Y.) (explaining history of executive order and citing cases holding overtime order did not become effective until October 13, 2015).

### D. Release of Claims

In return for the above consideration, the Plaintiffs will release: claims for unpaid wages for hours worked under the Fair Labor Standards Act, the New York Labor Law, the New York Wage Parity Act, the New York Wage Theft Protection Act, or the New York Common Law alleging that the Plaintiffs were not paid full wages for their hours worked for any Defendant or were not provided proper notices related to their employment. The release expressly excludes: (a) any claim alleging discrimination, (b) any claim for retaliation for a complaint of

7

discrimination, and (c) any negligence or tort claim alleging a personal injury not caused by a failure to pay wages. This release, as limited to Plaintiffs' wage-and-hour-related claims against Defendants, is consistent with releases approved by New York courts in similar FLSA and Labor Law actions. See Order and Final Judgment, *De Carrasco v. Life Care Servs. Inc*., No. 17-cv-5617 (S.D.N.Y. Dec. 14, 2018,) Dkt. No. 59 (approving settlement containing comparable release of claims); see also *Settlement Agreement at 11-12, De Carrasco v. Life Care Servs. Inc*., No. 17-cv-5617 (S.D.N.Y. Dec. 14, 2018,) Dkt. No. 54-1 (releasing claims relating to inter alia FLSA, NY Labor Law, and NYC Admin Code); see also Order and Final Judgment, *Hypolite v. Home Health Care Services, et al*., No. 16-cv-4922 (S.D.N.Y. Nov. 27, 2018) Dkt. No. 106 (approving settlement containing comparable release of claims); Settlement Agreement at 13-14 (S.D.N.Y. November 16, 2018), Dkt. 101-1 (releasing claims relating to inter alia FLSA, NY Labor Law, and NYC Admin Code).

### E.     Arm's Length Bargaining

Both parties engaged in good faith, arm's-length negotiation in reaching this settlement, and negotiated settlement terms over the course of numerous weeks until a tentative settlement was reached, and a Settlement Agreement was signed. The parties exchanged numerous offers and counter offers before a compromise settlement was finally reached.

### F.     Possibility of Fraud or Collusion

Given the parties' arms-length, good faith negotiating and the fact that the settlement is recovering a significant amount of the potential damages, the parties submit that there was no fraud or collusion. The parties represented their clients zealously and obtained what both parties consider to be an appropriate settlement.

### IV.    PLAINTIFFS' COUNSEL CONTENDS THE LEGAL FEES TO BE PAID UNDER THE SETTLEMENT AGREEMENT ARE REASONABLE

The Parties agreed in the Agreement that the Court must approve attorneys' fees, and such fees shall not exceed $20,268  (expenses of $402 and fees of $19,866 equal to 1/3 of balance of recovery).  Defendants have agreed not to oppose counsel's request for approval of attorneys' fees.  Attached as Exhibit B are the time and expenses records of William C. Rand.  The fee is reasonable on a percentage basis as it represents one-third of the settlement, after reimbursement for advanced expenses ([$60,000 - $402]/3).  The fee is also reasonable on a lodestar basis as counsel's time spent on the case to date is 111.7 hours which at Plaintiffs' Counsel's $450 per hour rate equals a lodestar of $50,265 which constitutes a multiple of .40, ($19,866/$50,265) which is less than one and thus presumed fair, and constitutes an hourly rate of $178 per hour (fee of $19,866/111.7 hours), which is reasonable.

The FLSA and New York Labor Laws are fee-shifting statutes, entitling Plaintiffs to recover their reasonable attorney's fees and costs.  See 29 U.S.C. § 216 (b).  Legal fees in FLSA actions are the result of fee shifting in the statute and are not subject to proportionality to the recovery but rather are recovered based on the work performed regardless of the monetary recovery achieved.  Ramirez v. M.L. San Jose Enters., 2021 U.S. Dist. LEXIS 57178 (S.D.N.Y. March 25, 2021) (LGS) (approving FSLA settlement)

The Second Circuit has stated that fees awarded under fee shifting statutes must be "reasonable" and "based on scrutiny of the unique circumstances of each case." *Goldberger v. Integrated Resources, Inc.* 209 F. 3d 43, 47-53 (2d Cir. 2000).  Goldberger also establishes six factors a reviewing court should consider in evaluating what constitutes a reasonable fee: "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation…; (3) the risk of the litigation; (4) the quality of the representation [measured by result]; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Id.* at 50

9

(citation omitted). *See Chambless v. Masters, Mates, & Pilots Pension Plan*, 885 F. 2d 1053, 1058 (2d Cir. 1989). Furthermore, a reasonable hourly rate is a rate "in line with … prevailing [rates] in the community for similar services by lawyers of reasonable comparable skill, expertise and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Chambless*, 885 F. 2d at 1058-59. A district court can also use its knowledge of the relevant market when determining the reasonable hourly rate. *See Miele v. New York State Teamsters Conference Pension & Ret. Fund*, 831 F. 2d 407, 409 (2d Cir. 1987).

The Second Circuit also stated that district courts should not reduce the award of attorney's fees simply because an attorney is a solo practitioner. *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91 at 98 n. 6 (2d Cir. 2006). In determining the relevant "market" a court may look to rates charged by those in a similar professional situation, including looking to the rates charged by large or medium-sized law firms. The rationale behind this practice is that a client represented by a medium-sized firm typically pays less than a large-sized firm with higher overhead costs. Overhead costs should not determine which attorneys should be awarded a higher or lower fee. Some highly skilled attorneys decide not to affiliate themselves with a firm for various reasons and choose to be solo practitioners. Moreover, the inquiry into the reasonable hourly rate should focus on the "prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation." *Blum*, 465 U.S. at 895 n.11; *Chambless*, 885 F. 2d at 1058-59.

The Second Circuit has made clear that no proportionality to recovery should be required in determining a fair fee in an FLSA case because the FLSA includes a fee shifting provision designed to encourage attorneys to bring cases that would not be economical under a straight percentage contingency. *See Luo v. L&S Acupuncture, P.C.*, 649 Fed. Appx. 1, 3 (2d

10

Cir. May 16, 2016) (post *Cheeks*, stating "we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation"). In the *Luo* case, the Second Circuit refused to reverse the legal fee award of $64,038 in a case where the plaintiff recovered only $4,830.67. The Court stated:

> We have held that the "lodestar" is the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany Cty. Bd. of Elections, 522 F.3d 182, 183 (2d Cir. 2008); see also Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) ("The lodestar approach governs the initial estimate of reasonable fees."). Appellants concede that there is no "per se proportionality rule," Appellants' Br. at 10, and "we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation," Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005). In Millea v. Metro-North Railroad Co., 658 F.3d 154 (2d Cir. 2011), we held that it was legal error for a district court to calculate the fee award as a proportion of damages in a suit under the Family and Medical Leave Act. Id. at 169. We noted that although a district court "may, in exceptional circumstances, adjust the lodestar, it may not disregard it entirely." Id. (citation omitted). "Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel." Id. "The whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery." Id. As both the FLSA and the New York Labor Law are fee-shifting statutes, see 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a), we see no reason to depart from the general rule in this case.

*Luo*, 649 Fed. Appx. at 2-3 (emphasis supplied); *see Fisher v. SD Prot. Inc.,* 948 F.3d 593, 600 (2d Cir. 2020) (fee not required to be proportional to recovery; finding that limiting attorneys fees to 33% of total settlement contravenes the FLSA, a uniquely protective statute, because attorneys would be discouraged from litigating low value cases and these plaintiffs would be left with little legal recourse). "When presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." Fisher, 948 F.3d at 606.

11

Thus, the Second Circuit has made clear that the district court may not alter a settlement and has made clear that the lodestar is the presumptively reasonable fee and that proportionality is not a factor to consider as "calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee shifting statutes." Id.

### A. Percentage Analysis-The Fees equal One-Third of the Total Settlement and thus are Deemed Reasonable

Instead of using the lodestar method, courts may employ the "percentage of the fund" method. *See McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable. Her the fee requested is fair because it equals one-third the recovery after the reimbursement of expenses.

Courts in the Second Circuit routinely award attorney's fees in FLSA settlements of one-third of the total recovery. *See Zorn-Hill v. A2B Taxi LLC*, 2020 U.S. Dist. LEXIS 170608, 2020 WL 5578357, at *6 (S.D.N.Y. Sept. 17, 2020) (collecting cases); *Garcia v. Atlantico Bakery Corp.*, 2016 U.S. Dist. LEXIS 84631, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."). Given that courts in this Circuit routinely award one third of the Settlement Amount for attorney's fees, the fee request for one-third of the settlement should be found to be reasonable.

In fact, a number of cases have recently awarded more than one-third the recovery based on the fee shifting provision of the FLSA. *See Vilalva-Estrada v. SXB Rest. Corp.,* 2016 U.S. Dist. Lexis 43609 (S.D.N.Y. March 31, 2016) (approving fees of $1,500 equal to 37.5% of recovery); *Flores v. Steinway Dental Lab, Inc.,* 2017 U.S. Dist. Lexis 20710 (awarding fees of $21,000 equal to 49.4% of Settlement); *Kim v. Major Auto Group*, 2016 U.S. Dist. Lexis 39676

(E.D.N.Y. March 24, 2016)(awarding fees of $81,000 equal to 36% of settlement); *Ali v. David Bouley LLC,* No. 14 Civ. 07135, ECF No. 70 (S.D.N.Y. Oct. 18, 2016) (approving $40,000.00 for the two plaintiffs and $57,500.00 of attorneys' fees); *Delilar v. Foodfest Depot, LLC,* No. 15 Civ. 0459, 2016 WL 3452797, at *1-*2 (S.D.N.Y. June 14, 2016) (approving $35,000.00 payable to the plaintiff with $65,000.00 for attorneys' fees); *Saldivar v. Aki Renovations Group, Inc.,* No. 15 Civ. 03130, ECF Nos. 38, 36-2 (E.D.N.Y. Feb. 10, 2016) (approving $18,121.61 to the four plaintiffs and $30,000 of attorneys' fees); *Trimmer v. Barnes & Noble, Inc.*, No. 13 Civ. 579 (JGK), ECF No. 89 (S.D.N.Y. May 21, 2015) (Order and Letter approving of $37,500 for the plaintiffs and $223,270 of attorneys' fees); *Zamora v. One Fifty Seven Corp.,* 2016 U.S. Dist. Lexis 49286 at *2 (S.D.N.Y. April 1, 2016) (approving $56,843 to the plaintiff and $71,657 of attorneys' fees).

See also *Jones v. Bryant Park Market Event LLC,* 13-CV-1369, ECF Entry of 10/24/2016 (AJP - SDNY)(approving $4,000 in damages and $55,000 in fees and costs under Cheeks); *Domenech v. Parts Authority, Inc.* 15CV-3595, ECF No. 41, 42 (ILG - EDNY)(approving $70,000 in hourly legal fees and costs under *Cheeks*); *Stokes v. Bedford Stuyvesant New Beginnings Charter School*, Case No. 16-CV-04575 ($17,500 in hourly legal fees and costs and $20,000 in damages under *Cheeks*); *Kelly v. Call-A-Head Corp.*, Case No. 17-CV-5737 ($10,400 in hourly legal fees and $7,100 in damages under *Cheeks*); *Cajamarca v. Sound Marine Construction & Salvage, Inc.*, 15-cv-6667, ECF No. 23, 25 (LTS - SDNY)(approving $19,445 in hourly legal fees and $30,000 in damages); *Tineo v. Dean's West Side Contracting Corp.*, 15-cv-2323, ECF NOS. 28-29 (S.D.N.Y) (JMF)(RLE)($19,385 in hourly legal fees and $30,000 in damages); *Boodhoo v. Jet Way Security & Investigation LLC*, 15-CV-1733, ECF Nos 25, 27 (CBA-RER – EDNY)($15,000 in hourly legal fees and $9,540 in

damages); *Lopez v. 1710 Montgomery Realty Assoc., L.P. et al.,* Case No.16-cv-06038, ECF No. 34 (approving $20,000 in damages and hourly fee of $15,000 under *Cheeks*); *Francis v. Bowery Residents' Committee, Inc.,* 15-cv-07102, ECF No. 25 (RLE - SDNY) (approving $5,000 in damages and $10,500 in fees and costs under *Cheeks*); *Caraballo v. 1195 Sherman Ave.,* 15-cv-02325(WHP - SDNY), ECF No. 31 (approving $3,000 in damages and $10,000 in fees and costs under *Cheeks*); *Precil v. U.S. Security Associates, Inc.,* 15-cv- 8893, ECF No. 14 (PGG - SDNY) (approving $3,780 in damages and $8,720 in fees and costs under *Cheeks*); *Soler v. Mase Electric, Inc. et al,* 16-cv-1653(LMS - SDNY), (February 7, 2017 text only Order - approving $4,500 in damages and $10,000 in fees and costs under *Cheeks*). Here the fee represents one-third of the recovery and thus is fair and reasonable.

**B. Lodestar Cross Check Analysis-The Fee Equals less Than the Lodestar and Thus is Reasonable**

A lodestar cross-check supports the requested fees. When applying the percentage method to an award for attorney's fees, courts in this Circuit follow the trend of applying the lodestar method as a "cross-check" to ensure the reasonableness of the award. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) ("[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case."); *see Lawtone-Bowles v. City of New York*, 2021 U.S. Dist. LEXIS 69167 *; 2021 WL 1326865 at *11 (S.D.N.Y. April 8, 2021).

The lodestar is assessed by "multiplying the hours reasonably expended on the case by a reasonable hourly rate." The lodestar multiplier is calculated by dividing the fee award by the lodestar (the reasonable hours billed multiplied by a reasonable hourly rate). *See James v. China Grill Mgmt.*, No. 18-CV-455 (LGS), 2019 WL 1915298 at *8 (S.D.N.Y. 2019);

14

In determining the reasonable hourly rate, this Court must look to the current market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason*, 160 F. 3d 858, 882 (2d Cir. 1998). Because Plaintiffs' Counsel's office is located in Manhattan, the Court should look to the community of Manhattan labor and employment law litigation attorneys for comparable market rates. When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by examining what reasonable clients would be willing to pay. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183-84 (2d Cir. 2008).

Plaintiffs' counsel's hours reasonably reflect the numerous hours required to prosecute an action on behalf of the Plaintiffs including but not limited to (a) drafting a complaint and amended complaint for 2 plaintiffs, (b) drafting declarations for each Plaintiff, (c) drafting and filing a motion for collective action certification, (d) drafting discovery, (e) responding to discovery requests (f) reviewing and analyzing hundreds of pages of documents, (g) drafting excel spreadsheets to calculate damages based on assumptions, (h) communicating with clients to explain the risk associated with the claims and to negotiate the settlement, (i) drafting and executing the settlement agreement, and (j) drafting motion for settlement approval.

The $19,866 fee requested is 40% of the $50,265 lodestar (equal to 111.7 hours times $450 per hour) and represents a lodestar multiple of .40 which is less than 1. This lodestar is more than double the fees sought and demonstrates that the fee is reasonable. The fee shifting provision of the FLSA was designed specifically for this type of complex case where the law is complex and the amount of recovery for any individual claimant is not extremely large.

The fee is reasonable on a lodestar basis as Plaintiffs' Counsel's time spent on the case to date is 111.7 hours which at Plaintiffs' Counsel's $450 per hour rate equals a lodestar of $50,265 which constitutes a multiple of .40 which is less than one and thus presumed fair. See Villanueva v. 179 Third Ave. Restaurant Inc., 2018 U.S. Dist. Lexis 116379 at *8 (S.D.N.Y. July 12, 2018) (J. Nathan) (where lodestar multiplier is less than one, fee is deemed reasonable). Moreover the fee represents a reasonable hourly rate of $178 per hour ($19,866 $/111.7 hours).

"In recent years multipliers of between 3 and 4.5 have become common" and a multiple of 2.09 has been described as "at the lower end of the range of multipliers awarded by courts within the Second Circuit." *In re Lloyd's Am. Trust Fund Litig*., 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002); *see also Maley v. Del Global Techs. Corp*., 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (finding multiplier of 4.65 "well within the range awarded by courts in this Circuit and courts throughout the country"); *Fujiwara v. Sushi Yasuda Ltd.,* 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) ("In this Court's opinion, a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases. The plaintiffs' bar is presumably selective enough with the cases they take on to win a recovery in at least half of them. A multiplier near 2 compensates them appropriately").Courts regularly award lodestar multipliers from two to six times lodestar." *Johnson v Brennan*, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *20 (S.D.N.Y. September 16, 2011) (*citing In re Lloyd's Am. Trust Fund Litig.,* 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (stating that a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley v. Del Global Techs. Corp*., 186 F. Supp. 2d 358, 371 (S.D.N.Y.2002) (explaining that the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 489

(S.D.N.Y.1998) (awarding multiplier of 3.97 times lodestar)); *Weiss v. Mercedes-Benz of N. Am., Inc.,* 899 F. Supp. 1297, 1304 (D.N.J. 1995) (9.3 multiplier), aff'd, 66 F.3d 314 (3d Cir. 1995); *In re RJR Nabisco*, M.D.L. Docket No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *15-20 (S.D.N.Y. Aug. 24, 1992) (percentage-based fee representing 6 times lodestar).

Here the multiple is less than one which is far less than the two to six range that courts commonly use and demonstrates that the fee is reasonable. The rate of $450 per hour for the lodestar check is reasonable given the complexity of the action and the experience of the Plaintiffs' attorney. The biography of William C. Rand is attached as Exhibit C and shows that he has over twenty years of experience prosecuting wage cases and demonstrates that the $450 per hour rate is appropriate.

To determine reasonable hourly rates, the Court considers this Circuit's adherence to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits. *See Simmons v. N.Y. City Transit Auth.,* 575 F.3d 170, 175-76 (2d. Cir. 2009); *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).

Courts in the Southern District have often approved rates of $450 per hour or more. *See Lawtone-Bowles v. City of New York*, 2021 U.S. Dist. LEXIS 69167 *; 2021 WL 1326865 at *11 (S.D.N.Y. April 8, 2021) (approving rates of $400 to $735 for partners) (citing cases); *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 55 (S.D.N.Y. 2015) (approving partner rates of $675 per hour*); Broad. Music, Inc. v. Pamdh Enters., Inc.,* No. 13-cv-2255 (KMW), 2014 WL 2781846, at *7 (S.D.N.Y. June 19, 2014) (collecting cases awarding $400 to $735 per hour for partners). *See Douglas v. Spartan Demolition Co. LLC*, 2018 U.S. Dist. LEXIS 163387 (Sept. 21, 2018 S.D.N.Y.) (finding $450 per hour reasonable rate for the work of attorney William C. Rand); *See Cortes v. Juquila Mexican Cuisine Corp.,* 2021 U.S. Dist.

Lexis 60374 at *10 (E.D.N.Y. March 29, 2021 (approving $500 per hour rate with extensive analysis of rates).

Thus the fee is fair as the lodestar multiple is less than one, indicating that the Plaintiffs' counsel's fee is far less than his hours worked paid at his fair rate.

### C.  Negotiated Attorney's Fee Agreements Are Favored

The Parties agreed in the Agreement that the Court must approve attorneys' fees and expenses, and such fees and expenses shall not exceed $18,491.82.  Defendants have also agreed not to oppose counsel's request for approval of attorneys' fees.  Negotiated attorneys' fee agreements are favored in collective action settlements. Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible. *See In re MDC Holdings Sec. Litig.*, [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,474, at 97,487-88 (S.D. Cal. Aug. 30, 1990) ("Because this Court believes the parties should be encouraged to settle all their disputes as part of the settlement… , including the amount of the fee, it believes that if the agreed-to fee falls within a range of reasonableness, it should be approved as part of the negotiated settlement between plaintiffs and defendants."); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys fees, ideally the parties will settle the amount of the fee between themselves."); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically and professionally arrive at a settlement as to attorney's fees.").

In affirming the award of a negotiated fee, the Second Circuit has stated:

> [W]here…the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application for

> fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after the settlement.

*Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985), cert. denied, 475 U.S. 1143 (1986).

The virtue of a fee negotiated by the parties at arm's length is that it is, in effect, a market-set price. Defendants have an interest in minimizing the fee; plaintiffs have an interest in maximizing it; and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the court might award if the matter were litigated. In In re Continental Illinois Securities Litigation, 962 F.2d 566 (7th Cir. 1992), Judge Posner of the Seventh Circuit endorsed a market-based approach to evaluating fee requests. "[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price." Id. at 568. "It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." Id. "Markets know market values better than judges do." Id. at 570. "The object in awarding a reasonable attorney's fee…is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible." Id. at 572. Here, such a negotiation was feasible, and was conducted. The Settlement, including a fee payment, was negotiated at arm's length by sophisticated counsel familiar with the case, the risks for both sides, the nature of the result obtained for the Plaintiffs, and the magnitude of the fee the Court might award if the matter were litigated. Thus, the negotiated fee is entitled to a presumption of reasonableness.

### D. The Requested Costs Are Reasonable

In addition to the time he spent, Plaintiffs' counsel incurred $402 in costs and expenses in the pursuit of this litigation, constituting the fee associated with filing the complaint. Courts

19

typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987*); Sheet Metal Workers Nat'l Pension Fund v. Evans*, No. 12 Civ. 3049, 2014 U.S. Dist. LEXIS 80118, 2014 WL 2600095, at *11 (E.D.N.Y. Jun. 11, 2014). This expense was reasonably and necessarily incurred in the prosecution of this action. Accordingly, Plaintiffs' counsel respectfully requests that the Court award reimbursement of this expense in full.

## CONCLUSION

In conclusion, the parties request that the Court approve the settlement.

Dated: New York, New York
February 14, 2022

LAW OFFICE OF WILLIAM COUDERT RAND

S/William C. Rand

William Coudert Rand, Esq.
501 Fifth Avenue, 15th Floor
New York, New York 10017
Tel: (212) 286-1425
*Attorney for Plaintiffs*

ECKERT SEAMANS CHERIN & MELLOTT, LLC

S/Timothy P. Coon, Esq.

Timothy P. Coon, Esq.
10 Bank Street, Suite 700
White Plains, NY 10606
T: 914-286-6438; C: 914-419-7613
tpcoon@eckertseamans.com
*Attorneys for Defendants*